IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Ricardo Fishbourne,<br><br>Plaintiff,<br>v.<br><br>Lt. Florenia Jones, Alexandria Jackson, Lt. Randy Ward, Warden Kenneth Nelson, Shadaya S. Jackson, Anntria Banks,<br><br>Defendants. | C/A No. 8:25-cv-1412-JFA-WSB<br><br>**OPINION AND ORDER** |

Plaintiff Ricardo Fishbourne, a state prisoner proceeding *pro se* and *in forma pauperis*, filed this case pursuant to 42 U.S.C. § 1983. (ECF No. 42). Currently an inmate at the Lieber Correctional Institution of the South Carolina Department of Corrections ("SCDC"), Plaintiff asserts claims against several correctional officers and the warden of Broad River Correctional Institute ("BRCI") for alleged violations of his Eighth Amendment rights that occurred during his time at BRCI. (ECF No. 42). Plaintiff seeks compensatory damages and punitive damages. *Id.*

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2) (D.S.C.), the case was referred to the Magistrate Judge for pretrial proceedings. After reviewing Plaintiff's complaint and subsequent filings, the Magistrate Judge assigned to this action prepared a thorough Report and Recommendation ("Report"), which opines that Defendants' Motion for Summary Judgment should be granted and Plaintiff's cross motions for summary judgment should be denied. (ECF No. 229, p. 1). Plaintiff filed objections to the Report (ECF Nos. 232, 233, 184, 185). Thus, this matter is ripe for review.

Since the Report was issued, Plaintiff has filed three additional motions (ECF Nos. 231, 237, 238). The first reads as a motion to amend the complaint (ECF No. 231) but was conditionally withdrawn by a motion for sanctions (ECF No. 237). Plaintiff also filed a "Motion for Separation" (ECF No. 238) seeking relocation within SCDC. This Court reviewed these filings and has, to the extent appropriate, construed portions as objections to the Report, discussed below. Additionally, all outstanding motions are resolved herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This Court incorporates the relevant facts and standards of law on this matter as set forth in detail in the Report. A brief recitation of the relevant factual background is helpful in addressing Plaintiff's objections.

Plaintiff was transferred to BRCI on October 6, 2021, at which time he was placed into a general population dorm, despite his request for protective custody. (ECF No. 233-7, p. 11). Upon his arrival, Plaintiff alleges that he informed prison officials, including Defendant Jones, of his desire to be placed in protective custody "due to previous assaults at BRCI [and] ongoing hostilities" and his 2016 assault at BRCI. (ECF No. 42, p. 5–6; ECF No. 233-7, p. 11). At that time, Plaintiff did not identify specific individuals who posed a threat to his safety nor did he identify a specific threat to his safety. (*See* ECF No. 233-7, p. 11).

Over the next month, Plaintiff sent various inmate requests via automated request to staff member ("ARTSM") forms echoing his general concern for the hostile environment at BRCI and requesting protective custody. On October 14, 2021, Plaintiff submitted an ARTSM to Security stating that he has "enemies in all scdc prisons due to a network with inmates" and had "open beef with gangs." (ECF No. 42-3, p. 39). On October 23, 2021, Plaintiff submitted an ARTSM to Security through the inmate request portal repeating his interest in protective

custody due threats against him by "gang members" and "ex friends." (ECF No. 233-3, p. 3). On October 24, 2021, Plaintiff submitted two more ARTSMs to Security through the inmate request portal repeating his interest in protective custody. (ECF No. 42-3, p. 40–41). Written to Director Stirling, these three grievances echoed his earlier, general concerns and focused largely on his inability to have a cell phone. *Id.*

On October 29, 2021, Plaintiff submitted a request to Legal reiterating his desire for protective custody and espousing concerns of "sociopathic torture" by SCDC for having filed the lawsuits. (ECF No. 233-3, p. 4). This request is largely nonsensical, but to the extent it is related to any threat of harm, it exhibits his concern about safety in prison life. *Id.* This request was forwarded to the Warden's office and Division of Mental Health. *Id.* Later that day, Raven Vaught of the Division of Mental Health at BRCI met with Plaintiff for a "crisis visit." (ECF No. 42-3, p. 33). Vaught's report of Plaintiff's psychological assessment states that Plaintiff identified safety concerns in the Wateree unit and exhibited signs of paranoia. *Id.* The report states that Plaintiff felt the threat may be in retaliation from SCDC for filing prior lawsuits and did not focus on gang violence. *Id.* Yet, despite Plaintiff's general concern for his safety in Wateree, Plaintiff denied having any incidents since his transfer to BRCI and indicated his safety concerns were based on "vibes" that he could "feel something [was] going to happen." *Id.* at 33–34. Vaught reiterated that Plaintiff would need to contact security about safety concerns and protective custody. *Id.* at 33, 69. Her report included a recommendation for Defendants Ward and Nelson to interview the Plaintiff about protective custody. *Id.* at 33–36).

In February 2022, Plaintiff was transferred within BRCI from Wateree dorm to Monticello dorm. (*See* ECF No. 233-5, p. 1). On February 16, 2022, Plaintiff's sister called BRCI while Plaintiff listened from another phone line to inquire about his transfer from the

Wateree unit to the Monticello unit. (ECF No. 233-7, p. 1; ECF No. 233-5, p. 1–12 (call transcript)).[1] When someone at BRCI answered, Plaintiff's sister immediately asked for the call to be transferred to the Warden. (ECF No. 233-5, p. 5). Speaking with the warden's secretary, Plaintiff's sister inquired about the reason for the transfer. (ECF No. 233-5, p. 5–6). Uninvolved in and unaware of the reason for Plaintiff's move, the warden's secretary transferred the call to Defendant S. Jackson of Classifications. (ECF No. 233-5, p. 6). Defendant S. Jackson then explained the move from Wateree resulted from Plaintiff's disruptive behavior. (ECF No. 233-5, p. 7–12). During the call, Plaintiff and his sister reiterated his desire for protective custody, and Defendant S. Jackson explained the process required initiating a request through Security—not Classifications. (ECF No. 233-5, p. 7–12).

On February 18, 2022, Plaintiff submitted an ARTSM to Classifications through the inmate request portal repeating his interest in protective custody due to his pending lawsuit against SCDC and the threat of "gang members" who had previously stabbed him in 2016 and who were "all over the state." (ECF No. 233-5, p. 14). Classifications responded to the request within three hours reiterating that Plaintiff's move was based on his behavior and that a request for protective custody needed to be sent to Security, not Classifications. (ECF No. 233-5, p. 14). That same day, Plaintiff submitted a similar request to Legal that complained of his placement in Monticello and echoed the same concerns as the request to Classifications. (ECF No. 233-3, p. 5). This request was forwarded to the Warden's Office. *Id.*

[1] The phone call includes several voices that are conducting the call to BRCI while Plaintiff is listening from the other line. The identities of the other speakers are unknown, but the transcript makes clear when a BRCI official or Plaintiff is speaking. (ECF No. 233-5, p. 1–15).

On March 10, 2022, when Monticello was on "modified lockdown," Plaintiff travelled from the recreation area through the sallyport to his dorm on the B Side of Monticello. (ECF No. 42-2, p. 1, 5). Plaintiff allegedly had a verbal altercation with Defendant A. Jackson and another inmate—allegedly JJ Bethel. *Id.* at 1. According to Plaintiff, Bethel returned to B Side minutes later, accompanied by several others, and assaulted Plaintiff. *Id.* at 2. Plaintiff alleges that Bethel was able to travel freely between A Side and B Side because Defendant A. Jackson and Defendant Banks left the door unsecured and unattended. *Id.* at 4. The alleged altercation with Bethel left Plaintiff bloodied, and his injuries required medical treatment. (*See* ECF No. 42-3, p. 56, 65).

The assault is the nexus for this cause of action, but each defendant interacted with Plaintiff in various ways during his time at BRCI. The crux of Plaintiff's allegations centers around two sets of decisions. First, the protective custody determinations by Defendants S. Jackson, Ward, Nelson, and Jones from Plaintiff's arrival at BRCI in October 2021 until the incident, and second, the events of March 10, 2022. *Id.* at 17. To the extent that Plaintiff identified specific allegations against Defendants, those are also detailed individually below.

**a. Specific allegations against Defendants A. Jackson and Banks**

Plaintiff alleges that at the time of the assault, Defendant A. Jackson intentionally left her post to allow the assault to occur and upon witnessing the assault Defendant A. Jackson did not respond to it. (ECF No. 233, p. 2–3). Further, Plaintiff alleges that Defendants A. Jackson and Banks allowed the inmates to travel from A Side to B Side to assault him in violation of SCDC policy by leaving the gate unlocked. *Id.* at 1–3. Plaintiff also argues that Defendants A. Jackson and Banks allowed inmates to move freely while carrying weapons, by failing to search the inmates in violation of SCDC policy. *Id.* at 2–3.

**b. Specific allegations against Defendant S. Jackson**

Defendant S. Jackson's purported liability stems from her supervisory role in Classifications and phone call with Plaintiff and his sister. First, Plaintiff claims that Defendant S. Jackson's failure to place him in protective custody on February 16, 2022, after the call with Plaintiff and his sister violated his Eighth Amendment rights. (ECF No. 42-2, p. 15–16). He argues that Defendant S. Jackson had the authority either by the head of Classifications or by delegation from the Warden to place him in protective custody. (ECF No. 233-4, p. 1). Further, Plaintiff alleges that because Classifications denied his February 2022 ARTSM form that requested protective custody, Defendant S. Jackson is liable under a theory of supervisory liability as the supervisor of Classifications. *Id.* at 7.

**c. Specific allegations against Defendants Ward and Nelson**

Defendants Ward and Nelson's purported liability stems from their role in protective custody determinations and general supervisory liability as Lieutenant and Warden, respectively. First, Plaintiff alleges Defendants Ward and Nelson failed to interview Plaintiff after Vaught's report as Vaught recommended. (ECF No. 233-2, p. 1; ECF No. 233-7, p. 9). Further, Plaintiff argues that Defendants Ward and Nelson were "obviously aware of the harm via moving Plaintiff" and chose to relocate Plaintiff from Wateree to Monticello. (ECF No. 233-7, p. 9).

Plaintiff adds separate allegations for each Defendant Nelson and Defendant Ward. First, because three ARSTMs were forwarded to the Warden's office, Plaintiff argues that Defendant Nelson had notice of threats that Plaintiff faced and still did not place him in protective custody. (ECF No. 233-2, p. 4). Second, Plaintiff suggests that Defendant Ward

"had access to Plaintiff's files" which put him on notice of the risks of assault that Plaintiff faced and still did not place him in protective custody. (ECF. No. 185, p. 6).

**d. Specific allegations against Defendant Jones**

Plaintiff does not allege that Defendant Jones is subject to supervisory liability. Instead, Plaintiff argues that Jones refused Plaintiff's request for protective custody despite knowledge of the prior assault in 2016 and knowledge of his "open beef with gangs" upon his arrival at BRCI. (ECF No. 233-7, p. 11). Plaintiff argues that he informed Defendant Jones that his transfer was due to "ongoing safety issues" and "hostilities with the gang culture at BRCI." (ECF No. 233-7, p. 11).

## II. STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). A district court is only required to conduct a de novo review of the specific portions of the Magistrate Judge's Report to which an objection is made. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); *Carniewski v. W. Virginia Bd. of Prob. & Parole*, 974 F.2d 1330 (4th Cir. 1992). In the absence of specific objections to portions of the Magistrate's Report, this Court is not required to give an explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). Thus, the Court must only review those portions of the Report to which Petitioner has made a specific written objection. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005). Then, the court may accept, reject, or modify the Report or recommit the matter to the magistrate judge. 28 U.S.C. § 636(b).

"An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Dunlap v. TM Trucking of the Carolinas, LLC*, No. 0:15-cv-04009-JMC, 2017 WL 6345402, at *5 n.6 (D.S.C. Dec. 12, 2017) (citing *One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). A specific objection to the Magistrate Judge's Report thus requires more than a reassertion of arguments from the complaint or a mere citation to legal authorities. *See Workman v. Perry*, No. 6:17-cv-00765-RBH, 2017 WL 4791150, at *1 (D.S.C. Oct. 23, 2017). A specific objection must "direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

"Generally stated, nonspecific objections have the same effect as would a failure to object." *Staley v. Norton*, No. 9:07-0288-PMD, 2007 WL 821181, at *1 (D.S.C. Mar. 2, 2007) (citing *Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991)). The Court reviews portions "not objected to—including those portions to which only 'general and conclusory' objections have been made—for *clear error*." *Id.* (citing *Diamond*, 416 F.3d at 315; *Camby*, 718 F.2d at 200; *Orpiano*, 687 F.2d at 47) (emphasis added).

## III. DISCUSSION

In the Report, the Magistrate Judge recommends this Court grant Defendants' Motion for Summary Judgment because the record evidence creates no genuine dispute as to whether Defendants knew of a substantial risk of serious harm facing Plaintiff and failed to respond

reasonably. In response, Plaintiff filed numerous objections to the Magistrate Judge's recommendation. (ECF Nos. 232, 233, 184, 185).[2]

Throughout his numerous filings, Plaintiff includes several non-specific objections expressing disagreement with the Report's conclusions. For example, Plaintiff opines that the Report was "erroneous," (ECF No. 232, p. 4), and "incorrectly and in error held Plaintiff failed to argue" that there had been violations of federal law, (ECF No. 232-2, p. 3). (*See also* ECF No. 233-4, p. 4 ("Plaintiff objects because S. Jackson, Security and Warden office Response was not Reasonable to the 2-16-22 call."); ECF No. 233-4, p. 7 (describing the risk as a "long-standing red flag"); ECF No. 233-2, p. 2 (same)). Although these arguments set forth Plaintiff's general discontent with the Report's findings, they lack the necessary specificity to warrant a response from this Court.

Plaintiff also includes frivolous or irrelevant objections that do not warrant a response from the Court. (*E.g.*, ECF No. 232, p. 1–5 (alleging that the Report's filing date (August 6) was an attempt to threaten Plaintiff with the term "86"); ECF No. 232, p. 4 (stating that SCDC rules impute personal liability based on worker's compensation when employees fail to keep a safe workplace); ECF No. 233-4, p. 5, 8 (suggesting that the fact that "members of the public taxpayers that pay prison officials salaries" made the February 16, 2022, phone call is evidence of deliberate indifference).

[2] Plaintiff asks this Court to construe ECF Nos. 184 & 185 as objections. These are merely recitations of interrogatories submitted to the Court. Because these filings were submitted prior to the Report, they are not responsive to the Report—and not properly construed as objections. However, to the extent Plaintiff incorporates relevant portions of these filings into his responsive objections, those portions are incorporated by reference and have been addressed in the following discussion.

However, Plaintiff articulates several objections or arguments that set forth or can be construed as objections to the Report. Each is addressed in turn. At the core of his arguments in the objections, Plaintiff contends that prison officials failed to protect him from harm in a manner that violated his constitutional rights and that the Report failed to consider relevant evidence.

Due to the extensive objections filed by Plaintiff, a brief review of the law governing Eighth Amendment failure to protect claims is helpful before turning to the objections themselves.

**A. Eighth Amendment Failure to Protect**

The Eight Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. As applied to prisoners, the Eighth Amendment protects a convicted inmate from "physical harm at the hands of fellow inmates resulting from the deliberate or callous indifference of prison officials to specific known risks of such harm." *Jackson v. Bush*, 181 F.4th 407, 415 (4th Cir. 2026) (quoting *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987)).

An Eighth Amendment claim requires two showings. First, the plaintiff must establish "that the deprivation of a basic human need was objectively sufficiently serious." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement. *Id.* To demonstrate the necessary extreme deprivation, a prisoner must allege "a serious or significant physical or emotional injury resulting from the challenged conditions," *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993), or "demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions," *De'Lonta*, 330 F.3d at 634. Plaintiff's extensive injuries suffered on March 10, 2022, satisfy this first prong.

Second, the plaintiff must demonstrate that "subjectively the officials acted with a sufficiently culpable state of mind," meaning the defendant acted with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). This second prong—whether the Defendants acted with deliberate indifference to a substantial risk of serious harm that Plaintiff faced—occupies Plaintiff's central objections to the Report.

Deliberate indifference itself has two components: actual knowledge of the substantial risk of serious harm by the official and an objectively unreasonable response. *Farmer*, 511 U.S. at 835; *Case v. Beasley*, 167 F.4th 651, 659–60 (4th Cir. 2026). Deliberate indifference requires "something more than mere negligence," but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. The standard is close to recklessness: an official is liable when he actually "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Put differently, to show deliberate indifference, Plaintiff must show that the Defendants actually knew of the serious risk of harm *and* failed to respond reasonably. *See id.* at 844 ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.").

While deliberate indifference sets forth a high bar, "prison officials may not simply bury their heads in the sand and thereby skirt liability." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015). A plaintiff can show that an officer knew about a substantial risk through direct or circumstantial evidence, including "the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

The first prong of deliberate indifference—actual knowledge of a substantial risk of serious harm—requires more than the defendant's hunch "an inkling that trouble was afoot." *Battle v. S.C. Dep't of Corr.*, No. 19-cv-1739, 2021 WL 4167509, at *10 (D.S.C. Sep. 14, 2021). "[S]ubjective awareness of only *some* risk of harm to a prisoner is insufficient for a deliberate-indifference claim." *Id.* (quoting *Turner v. Okla. Cty. Bd. of Cty. Comm'rs*, 804 Fed. App'x 921, 926 (10th Cir. 2020)).

Plaintiffs claiming deliberate indifference must show the official in question "possess[ed] enough details about a threat to enable [him] to conclude that it presents a strong likelihood of injury, not a mere possibility." *Id.* (quoting *Turner*, 804 Fed App'x at 926). Thus, courts have generally concluded that, without more, an official's awareness of a plaintiff's non-specific fear of harm is insufficient to support a deliberate indifference claim. *See Turner*, 804 Fed App'x at 926 (explaining that "threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm"); *Knox v. Doe*, 487 Fed. App'x 725, 728 (3d Cir. 2012) (holding that inmate's statement to prison officials that "I feel it is now best you place me in protected custody due to the serious nature of threats on my life" insufficient to establish officials' deliberate indifference); *Battle*, 2021 WL 4167509, at *10 (collecting cases). Therefore, the first prong requires that the risk be substantial; the harm be serious; and the defendant must actually be aware of those two things.

Once prison officials are aware of the substantial risk of serious harm, prison officials are deliberately indifferent if they "could avert the danger easily yet they fail to do so." *Case*, 167 F.4th at 661 (quoting *Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir 2016). "[T]he Eighth Amendment requires more than some action: It requires reasonable action." *Id.* at 237 (emphasis omitted). However, negligence alone does not constitute constitutional violations.

*Cox*, 828 F.3d at 236; *Daniels v. Williams*, 474 U.S. 327, 332 (1986) ("Far from an abuse of power, lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person."). Nor does a violation of prison policy. *Joyner v. Patterson*, No. 13-cv-2675, 2014 WL 897121, at *4 (D.S.C. Mar. 4, 2014), *R&R adopted*, 2014 WL 3909531 (D.S.C. Aug. 11, 2014), *aff'd*, 597 F. App'x 748 (4th Cir. 2015).

**B. Plaintiff's Specific, Non-Frivolous Objections**

Throughout his objections, Plaintiff often summarily concludes that Defendants were "on notice" or that he faced a "risk of harm." However, a colloquial allegation of "failure to protect" has a lower threshold than those allegations that rise to a constitutional violation. *See Case*, 167 F.4th at 659–60. It is undisputed that Plaintiff was under the care and in custody of Broad River Correctional Institution at the time that another inmate struck him. However, more than custodial control and subsequent injury must be shown to establish an Eighth Amendment failure to protect claim.

Because Defendants' response to an unknown risk of harm cannot be the basis of an Eighth Amendment failure to protect claim, the first issue is whether each Defendant had actual knowledge of the substantial risk of serious harm facing Plaintiff—only then does the reasonableness of that Defendant's response come to issue. Plaintiff objects that evidence relating to whether Defendants had actual knowledge of his substantial risk of serious harm was overlooked or omitted by the Report including, among other things, Bethel's alleged comments, video evidence, prior reports of danger, and Vaught's psychological evaluation. Plaintiff also argues that Defendants failed to take reasonable steps to protect him, based on the alleged policy violations and failure to put him in protective custody. Each piece of

evidence that Plaintiff argues precludes summary judgment is discussed below, separated by defendant.[3]

Specifically, Plaintiff argues that Defendant A. Jackson and Defendant Banks's actions in the moments before the assault and during the assault were unreasonable in violation of his Eighth Amendment rights. Similarly, Plaintiff argues that Defendants S. Jackson, Nelson, Ward, and Banks unreasonably failed to act prior to the assault in various ways: Defendants Nelson and Ward's failure to interview Plaintiff for protective custody, Defendant S. Jackson's alleged lack of intervention after the phone call. (*E.g.*, ECF No. 233-4, p. 4; ECF No. 233-7, p. 6–7). Making these objections, Plaintiff overlooks the initial, fatal flaw in his case: a failure to prevent harm is itself inactionable without some subjective awareness of a risk of harm.

**a. Objections involving Defendant A. Jackson**

Plaintiff objects that the Report failed to consider Bethels' comments and video footage around the time of the incident.[4] (ECF No. 233, p. 4; ECF No. 233-3, p. 1). Plaintiff argues that this evidence warrants summary judgment in his favor, or at the least, creates a genuine dispute of fact that precludes summary judgment for Defendant A. Jackson. However, Plaintiff offers no admissible evidence that establishes, even circumstantially, that Defendant A. Jackson was actually aware that he faced a substantial risk of serious harm and failed to respond reasonably.

[3] Plaintiff raises most of these arguments repetitively throughout his numerous filings and objections. Thus, these objections have been grouped together by subject matter and defendant.
[4] Plaintiff also argues that SCDC policy violations were not properly considered in the Report. This objection is addressed below together with the same allegation made toward Defendant Banks.

Other than his assertions about conversations to which he was not a party, Plaintiff offers no evidence of the conversations' occurrence or substance. First, Plaintiff argues that Defendant A. Jackson was aware of a substantial risk of serious harm because fellow inmate Bethel told Defendant A. Jackson to leave her post to allow him to assault Plaintiff. (ECF No. 233-3, p. 1–2 (". . . Bethel spoke to A. Jackson apparently telling her he was about to do the assault . . . .")). In arguing this, Plaintiff offers his affidavit, (ECF No. 233-3, p. 1–2), and references video footage, (ECF No. 233, p. 4), to set forth evidence that the conversation happened before the assault.

Although an affidavit or declaration may be considered at the summary judgment phase, to be admissible, the affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Plaintiff admits he was not a party to the conversation. (*See* ECF No. 233, p. 4). Plaintiff's affidavit cannot cure the lack of evidence of this conversation because Plaintiff has no personal knowledge of the conversation's substance, referencing only its "apparent[]" substance. Thus, the only evidence of this alleged conversation in the record is Defendant A. Jackson's declaration which plainly denies its occurrence. (ECF No. 188-2, ¶ 10).

As part of this objection, Plaintiff objects to the Magistrate Judge's review of the video footage. (ECF No. 233, p. 4; ECF No. 233-3, p. 1). Specifically, Plaintiff alleges that the video footage shows that Bethel[5] spoke to Defendant A. Jackson at 9:33—two minutes before the

[5] Plaintiff alleges that fellow inmate JJ Bethel assaulted him. There is no footage of the assault. Further, neither party has identified Bethel among the numerous inmates in the video footage. Therefore, any reference to Bethel in video footage is based on this Court's assumption given the facts in evidence.

timestamps referenced in the Report. (ECF No. 233, p. 4; ECF No. 233-3, p. 1–2). Plaintiff claims that the video, at 9:33:22, shows a conversation between Defendant A. Jackson and Bethel where Bethel told her he would assault Plaintiff because of their earlier argument. (ECF No. 233-3, p. 1).

This Court has gone to great lengths to obtain copies of all relevant footage, and the Court has thoroughly reviewed all footage. Discussed here is the video footage of the "B Side Entrance" during the relevant period on March 10, 2022.[6] (BRCI Monticello B Side Entrance 158.238/V923D-N39M-IP007D817D9 [hereinafter Monticello B Side Entrance Video]). The video footage evidence shows the B Side common area and the door to Plaintiff's cell. *Id.* It does not show the sallyport area or the gate. *Id.* At the time stamps noted by Plaintiff, Defendant A. Jackson is unidentifiable until she later appears in the common area at 9:40. *Id.* A correctional officer is seen in the B Side office at 9:33:23. Even assuming that is Defendant A. Jackson, there is no evidence that Defendant A. Jackson had any conversation with Bethel, as Plaintiff argues. *Id.* All that is visible is the bottom half of a correctional officer's body through the office window. *Id.* There is no evidence of any communication occurring with an inmate. *Id.*

Having reviewed the footage, this Court finds no evidence that Defendant A. Jackson spoke with Bethel. In fact, Defendant A. Jackson is not seen having a conversation with any inmate in the video until Plaintiff is escorted out of his cell by Defendant Banks to receive

[6] The Report discussed footage located at ECF No. 135-5. (ECF No. 229, p. 18 n. 7). That citation was to the docket in Plaintiff's earlier iteration of this cause of action—C/A No. 8:23-cv-5469-TMC. Plaintiff and Defense counsel continued to reference the video footage without reintroducing it in evidence in this case. As such, these citations are to the videos, titled by camera location.

medical attention. (Monticello B Side Entrance Video). That interaction is only a passing glance or comment. *Id.* at 90:40:14. Therefore, Plaintiff's objection that Bethel told Defendant A. Jackson to leave her post and that the conversation is circumstantial evidence that Defendant A. Jackson knew Plaintiff faced a substantial risk of serious harm is overruled.

Plaintiff also alleges that the video reveals that Defendant A. Jackson witnessed the assault and failed to act. (ECF No. 233, p. 4). There is no footage of the incident. Plaintiff offers no witness testimony of the incident. Plaintiff's allegation asks the Court to stack assumption upon assumption to reach Plaintiff's desired conclusion. That is something this Court cannot do. *Stone v. Liberty Mut Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997) (The nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)). Plaintiff must offer more than mere unsubstantiated speculation to withstand summary judgment. *Koon v. North Carolina*, 50 F.4th 398, 409–10 (4th Cir. 2022).

Therefore, no evidence supports Plaintiff's objection that Defendant A. Jackson witnessed the attack and failed to intervene in a reasonable manner as required by the Eighth Amendment. Plaintiff's objections related to Bethel's comments and the video evidence are overruled.

**b. Objections involving Defendant Banks**

Bethel's alleged comments after the incident do not establish that Defendant Banks had actual knowledge of a substantial risk of serious harm. Plaintiff argues that Bethel's comments to Defendant Banks *after* the incident are circumstantial evidence of Defendant Banks's knowledge of danger to him *before* the incident. (ECF No. 233, p. 4–5; ECF No. 233-3, p. 1–

2). According to Defendant Banks's interrogatories, Bethel stated that "we handled it. We ain't going to tolerate no disrespect." (ECF No 184-1, p. 3). Specifically, Plaintiff alleges that Bethel's admission that "we handled it" to Defendant Banks is circumstantial evidence of Defendant Banks's knowledge that Plaintiff faced a substantial risk of serious harm. (ECF No. 233-2, p. 1–2; ECF No. 233, p. 4).

The video footage does not show any conversation between Defendant Banks and any inmate until she comes to retrieve Plaintiff from his cell after the assault and then again when she returns a minute later to lock the cell. (*See* Monticello B Side Entrance Video at 9:40:01, 9:41:14). Therefore, the video footage offers no circumstantial evidence related to these comments.

Further still, the only evidence in the record shows that Banks admonished Bethel after she was informed of what happened. (ECF No. 184-1, p. 6). Without more than Plaintiff's unsubstantiated allegations, the Court cannot draw Plaintiff's preferred inference from the evidence provided. *Cf. Jackson*, 181 F.4th at 415 ("In hindsight, letting [inmate assailants] out posed a significant threat. But we must consider how [the defendant] perceived the risk *at the time*." (emphasis added)). This objection again asks the Court to stack assumption upon assumption to reach Plaintiff's desired conclusion. Plaintiff must offer more than mere unsubstantiated speculation to withstand summary judgment. *Koon*, 50 F.4th at 409–10. Therefore, Plaintiff's objection that Bethel's comments evince some subjective *prior* knowledge of a substantial risk of serious harm is overruled.

**c. Objections involving both Defendant Banks and Defendant A. Jackson**

Plaintiff's objections that focus on both Defendant Banks and Defendant A. Jackson can be summarized as a disdain for the well-settled law that negligence and policy violations are, without more, not constitutional violations. *Jackson*, 181 F.4th at 414; *King v. Riley*, 76 F.4th 259, 267 (4th Cir. 2023) (recognizing that "knowingly violating a prison policy does not amount to deliberate indifference").

Even if Plaintiff proves a violation occurred—which is not entirely clear based on the record evidence—Plaintiff must still establish that Defendants were deliberately indifferent. *Id.* Construed liberally, Plaintiff's objections argue that policy violations are circumstantial evidence that Defendant Banks and Defendant A. Jackson knew Plaintiff faced a substantial risk of serious harm because the policy itself is evidence that the risk was obvious. (ECF No. 233, p. 1–3, 5).

If Plaintiff establishes that the substantial risk of serious harm was obvious, summary judgment is inappropriate. *Farmer*, 511 U.S. at 842. While deliberate indifference sets a high bar, "prison officials may not simply bury their heads in the sand and thereby skirt liability." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015). A risk is "obvious" not where "a reasonable officer *would have* found the risk to be obvious" but where "the risk of injury is 'so obvious that the fact-finder could conclude that the officer *did* know of it because he could not have failed to know of it.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (cleaned up) (quoting *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir.1995)). A risk may be "obvious" where the plaintiff offers circumstantial evidence that the "substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison

officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it." *Makdessi*, 789 F.3d at 133 (quoting *Farmer*, 511 U.S. at 842–43)). Although a plaintiff may establish actual knowledge of the substantial risk of serious harm by showing that a risk was "obvious," it must have been obvious to that defendant at that time, without the benefit of hindsight. *Jackson*, 181 F.4th at 415.

Even where a Plaintiff can establish that the risk was obvious, a prison official may still rebut that claim. For example, a defendant might show "that [the defendant] did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Farmer*, 511 U.S. at 844.

Citing Defendant Banks's interrogatory, Plaintiff argues that at least Defendant Banks knew that assaults were pervasive in Monticello dorm. (ECF No. 184, p. 4). Plaintiff's summary wholly misstates the evidence. Defendant Banks's interrogatory states that "[i]nmate on inmate assaults did occur" in Monticello, but that "was not a significant problem." (ECF No. 184-1, p. 4). Plaintiff's own evidence clearly shows that Defendant Banks did not know of a substantial risk of serious harm based on pervasive or longstanding issues with inmate attacks. Therefore, this objection is overruled.

Next, Plaintiff includes two objections related to specific policy violations as "per se constitutional violations. (ECF No. 233, p. 1–4). Policy violations may be circumstantial evidence of the second prong of deliberate indifference. However, to allow a policy's existence alone to be circumstantial evidence of Defendants' actual knowledge of a substantial risk of

serious harm would swallow the rule. *See Case*, 167 F.4th at 660 (finding an Eighth Amendment violation where the safety risk of violating the separation policy was "expressly noted by prison officials *and* communicated to the [defendants]" (emphasis added)). As discussed below, these alleged violations are not circumstantial evidence of the subjective prong of deliberate indifference.

The Fourth Circuit recently held that even those policy violations that are objectively "troubling," do not set forth the subjective prong of deliberate indifference. *Jackson*, 181 F.4th at 416. In *Jackson*, the inmate-plaintiff was stabbed and killed by a fellow inmate after "lax verification standards" in a maximum security prison allowed two inmates out of their cells in violation of the prison's protocol. *Id.* at 415. Placed in a maximum security prison, the inmate-assailant lied to the defendant-officer, claiming to be a barber to get released from his cell. *Id.* The "troubling" verification standards and surveillance allowed the inmate to wander freely around the dorm "with a weapon for over six minutes." *Id.* at 416. The Fourth Circuit reiterated that policy violations alone were not enough to meet the high standard of deliberate indifference. *Id.*

Further, the Fourth Circuit has affirmed summary judgment requiring more than policy violations when officers allowed two inmates with "separation orders with respect to other inmates" to interact. *Danser v. Stansberry*, 772 F.3d 340, 348 (4th Cir. 2014). Addressing each of these objections individually, neither is evidence that Defendants Banks and A. Jackson knew of a substantial risk of serious harm or failed to respond reasonably.

First, Plaintiff objects to the Report based on his argument that the failure to search for weapons is a per se constitutional violation in the Eighth Amendment context. (ECF No. 233 p. 3–4; ECF No. 233-7; p. 15). Plaintiff cites two cases for this proposition: *Marrero v.*

*Commonwealth*, 222 Va. 754, 757 (1981) and *Hudson v. Palmer*, 468 U.S. 517 (1984). *Marrero v. Commonwealth* is neither controlling nor on point. In *Marrero*, the Virginia Supreme Court upheld the constitutionality of random searches in prisons under the Fourth Amendment. *Marrero*, 222 Va. At 757. *Marrero* stands for the proposition that suspicion-less searches are constitutional in prisons. *Id.* It says nothing about Eighth Amendment failure to protect claims such as this. *Hudson v. Palmer* faces the same defect. In *Hudson*, the Supreme Court discussed whether intentional destruction of property by prison officials was actionable under § 1983. 468 U.S. at 519. This Court cannot ascertain any argument about the applicability of *Hudson* in this action. At most, Plaintiff identifies a policy violation that is evidence "lax verification" and negligence. Still, Plaintiff has not set forth evidence that Defendants A. Jackson or Banks knew of a substantial risk of serious harm. Without such knowledge, any policy violation by Defendants cannot be evidence that Defendants acted unreasonably. Therefore, this objection is overruled.

Second, referring to earlier filings, Plaintiff argues that Defendants Banks and A. Jackson's interrogatories establish that the inmates were mistakenly allowed to cross between A Side and B Side because Defendants Banks and A. Jackson left the door unlocked. (ECF No. 233, p. 1–3, 5; ECF No. 233-7, p. 13–15). Plaintiff alleges that allowing inmates to cross from A Side to B Side is a per se constitutional violation in modified lockdown, citing *Toomer v. Willies*, No. 12-83, 2015 WL 9259315 (D. Md. Dec. 18, 2015). (ECF No. 233, p. 1–3).

Contrary to Plaintiff's assertion, *Toomer v. Willies* is inapplicable—nor is it controlling law. In *Toomer*, the inmate-plaintiff resided in the protective custody unit. *Toomer*, 2015 WL 9259315, at *1. The officer-defendant facilitated the entirety of the series of events, including intentionally opening "Plaintiff's protective custody cell with full knowledge that the

unrestrained [assailant inmate] would thereby be able to access it." *Id.* at *5. The Court held that Plaintiff had offered sufficient evidence—not just allegations—that the officer had "exposed Plaintiff to a *specific and unique risk* that [was] distinct from the general risk of prison violence." *Id.* (emphasis added).

Here, any alleged policy violations by Defendants A. Jackson and Banks occurred with a level of generality that distinguishes the facts from those in *Toomer*. Unlike the individualized inmate interactions in a lockdown protective custody unit, the B Side of Monticello was in the midst of recreational time. (ECF No. 233-1, p. 13). Any risk arising from violations of inmate movement policies were not "specific and unique" to Plaintiff but impacted all inmates equally. *See Toomer*, 2015 WL 9259315, at *5. Plaintiff argues that Monticello was in a "state of emergency lockdown," (ECF No. 184, p. 2), but offers no evidence to support his contention. Instead, the evidence in the record indicated that the A Side was modified lockdown, (ECF No. 184, p. 6; ECF No. 233-1, p. 11), during which time inmate workers, like Bethel, were free to move about the sallyport area as needed, (ECF No. 233-1, p. 13). Therefore, no part of these allegations mirror the facts of *Toomer*.

Further, Plaintiff does not clearly set forth evidence of a policy violation at all because he offers no evidence of the policies and procedures associated with modified lockdown or whether standard lockdown procedures apply in full—again, asking the Court to fill in the blank with an assumption. All evidence Plaintiff cites addresses lockdown procedures, not modified lockdown procedures. For example, Plaintiff cites Post Order #35 (ECF No. 42-3, p. 45–49) as evidence that three staff members should have been present and all doors should have remained locked. (ECF No. 42-3, p. 47). However, the evidence makes clear, and Plaintiff admits, that the Monticello dorm was only on "modified lockdown." *Cf. Case*, 167 F.4th at

656 (Eighth Amendment claim survived summary judgment because the officers knew that *some* inmates were to be separated from the general population yet still let the two groups interact).

Plaintiff offers no evidence that inmate workers were not allowed to access both A Side and B Side on the morning of March 10, 2022. Plaintiff's conclusory allegations are insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In fact, the only evidence in the record suggests otherwise (ECF No. 184–1, p. 5; ECF No. 233-1, p. 13). The evidence contradicts Plaintiff's repeated assertions that all movement was prohibited. The record establishes the following: (1) Monticello was on modified lockdown because B Side was having recreational time, (ECF No. 233-1, p. 11, 13) (2) dorm workers were allowed to move around during modified lockdown, including into the sallyport, *id.*; (3) during recreation the door was allowed to be unlocked, *id.* at 13; and (4) Bethel was a dorm worker, *id.* at 11, 13. Further, Plaintiff asks the Court to assume the assault occurred in the sallyport. If true, Plaintiff has not offered any evidence that raises a genuine dispute of material fact that a policy violation even occurred—much less its probative value. Therefore, this objection is overruled.

**d. Objections involving Defendant Jones**

Plaintiff's prior attack does not establish that Defendant Jones had actual knowledge of any substantial risk of serious harm Plaintiff faced. In his objections to the Report, Plaintiff argues that his prior stabbing in 2016 put prison officials, including Defendant Jones and Defendant S. Jackson "on notice of his risk of harm." (ECF No. 233-2, p. 6). Plaintiff states

that Defendant Jones's knowledge came from being a "first responder" to the 2016 assault at BRCI. (ECF No. 233-2, p. 6; ECF No. 233-7, p. 11).

Consistent with his allegations against Defendants S. Jackson, Nelson, and Ward, discussed below, Plaintiff assumes that his assault in 2016 automatically qualified him for protective custody for the remainder of his sentence. Not so. An inmate's history with violence or prior vulnerabilities does not automatically establish a substantial risk of serious harm. *Cf. Ford v. Hooks*, 108 F.4th 224, 231 (4th Cir. 2024) (affirming summary judgment where prison officials concluded that, despite the inmate's history of cooperating with prosecutors and ongoing threats from gangs, prison officials lacked enough information to determine whether protective custody was appropriate). Plaintiff's prior assault did not, by prison policy or by law, stain his inmate record in perpetuity or require protective custody forever. Plaintiff offers no evidence that Defendant Jones had actual knowledge that he faced a substantial risk of serious harm other than the tenuous connection between the assault in 2016 and "ongoing hostilities." (ECF No. 233-2, p. 6; ECF No. 233-7, p. 11). Therefore, Defendant Jones's knowledge of Plaintiff's history of violence more than five years before the incident, without more, is not circumstantial evidence that Defendant Jones was actually aware of a substantial risk of serious harm. This objection is overruled.

**e. Objections related to Defendant S. Jackson**

The phone call between Plaintiff, Plaintiff's sister, and Defendant S. Jackson does not establish that she had actual knowledge of any substantial risk of serious harm to Plaintiff or failed to respond reasonably. First, Plaintiff objects to the "causal link to 3-10-22 injury." (ECF No. 233-4, p. 1). This objection contains several conclusory statements about the reason why

Plaintiff was attacked, without any evidence to support those statements. *Id.* ("Because the 3-10-22 injury is a result of inmate gangs that did the assault did it for [Defendant] A. Jackson."). This argument is merely a legal conclusion about causation. Plaintiff's legal conclusions or conclusory allegations, without more, cannot create a genuine dispute of material fact. *Anderson*, 477 U.S. at 248.

Further, and quite notably, Plaintiff's argument about the relevance of his prior assault and requests for protective custody is at odds with his argument about the reason for the March 2022 incident. On the one hand, Plaintiff claims that he needed protective custody because of his prior assault and statewide hostilities from gangs. (*E.g.*, ECF No. 233-2, p. 1–2). On the other, Plaintiff claims he was assaulted because he was disrespectful to Defendant A. Jackson. (ECF No. 233, p. 4).

An Eighth Amendment claim for failure to protect requires that Defendants' deliberate indifference caused the deprivation. *See Jackson*, 181 F.4th at 414 ("The Eighth Amendment protects a convicted inmate from physical harm at the hands of fellow inmates resulting from the deliberate or callous indifference of prison officials to specific known risks of *such* harm." (emphasis added) (quoting *Pressly*, 816 F.2d at 979)). Plaintiff has not shown any causal link existed between the asserted inaction of Defendant S. Jackson and the particular injury suffered by Plaintiff at the hands of Bethel. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Instead, Plaintiff argues that the incident occurred because of isolated, interpersonal conflict. (ECF No. 233-1, p. 1).

Plaintiff argues that the February 16, 2022, phone call is circumstantial evidence that Defendant S. Jackson had actual knowledge of a substantial risk of serious harm to Plaintiff. (ECF No. 233-7, p. 2–5). A review of the transcript confirms that it does not.

After the call was transferred to Classifications, Defendant S. Jackson explained the move from Wateree resulted from Plaintiff's disruptive behavior. (ECF No. 233-5, p. 7–12). Specifically, Plaintiff was very hostile toward his roommate and prison staff in Wateree. *Id.* at 9. During the call, Plaintiff and his sister reiterated his desire for protective custody, and Defendant S. Jackson explained the process required initiating a request through Security—not Classifications. (ECF No. 233-5, p. 7–12). Plaintiff's sister stated that Plaintiff felt safe in his current location and was scared that a move "put [him] in the dorm around the same gang" that had stabbed him in 2016. *Id.* at 6, 10. The call ended with Defendant S. Jackson being told she had a "nasty attitude," and not to "worry about it. Turn it over to God, and I promise your ass will regret it." *Id.* at 12.

However, from a constitutional standpoint, the general and non-specific fear Plaintiff articulated is insufficient to raise a triable issue of fact related to Defendant S. Jackson's subjective awareness of a substantial risk of serious harm facing Plaintiff. Awareness of "some risk of harm" is insufficient for a deliberate indifference claim. *Battle*, 2021 WL 4167509, at *10. "Any time an individual is incarcerated, there is some risk that he may be a victim of violence at the hands of fellow inmates." *Westmoreland v. Brown*, 883 F. Supp. 67, 74 (E.D. Va. 1995). That generalized risk alone does not support an Eighth Amendment claim. *See Grieveson v. Anderson*, 538 F.3d 763, 776–77 (7th Cir. 2008). Courts have generally concluded that, without more, an official's awareness of a plaintiff's non-specific fear of harm is insufficient to support a deliberate indifference claim. *Battle*, 2021 WL 4167509, at *10 (collecting cases). The transcript has been provided and offers no underlying basis to infer that Defendant S. Jackson possessed actual knowledge of a specific and serious risk of harm. In fact, Defendant S. Jackson did not even identify his new unit with which Plaintiff could have

taken objection. (*See* ECF No. 233-5, p. 8). Plaintiff's generalized fear of harm within the prison system is not sufficient to evince a substantial risk of serious harm under the Eighth Amendment.

Plaintiff argues that his move to the Monticello dorm is evidence that Defendant S. Jackson knew that he faced a substantial risk of serious harm at BRCI because he alleges his safety was the reason for the transfer. (ECF No. 233-4 p. 1). However, the uncontroverted evidence tells a different story: Plaintiff was transferred because of his own disruptive behavior in Wateree. (ECF No. 233-5, p. 8, 14; ECF No. 233-4, p. 7).

Prison officials have broad discretion in how to organize the prison and its inmates. *See Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991) ("[C]hanges in a prisoners' location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges . . . are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage the prisons safely and efficiently."). Given this discretion, Plaintiff's own disruptive behavior is not circumstantial evidence that Plaintiff faced a substantial risk of serious harm at BRCI. The institutional decision to move Plaintiff sought to alleviate the disruption Plaintiff was causing—meaning that it was, if nothing else, reasonable. Therefore, transferring Plaintiff from Wateree dorm to Monticello dorm does not establish that Defendant S. Jackson knew of any substantial risk of serious harm to Plaintiff or failed to act reasonably. This objection is overruled.

Defendant S. Jackson was told about Plaintiff's prior assault during the phone call on February 16, 2022. (ECF No. 233-5, p. 7–11). However, for the same reasons discussed with

respect to Defendant Jones, the prior assault does not establish actual knowledge of a *present* substantial risk of serious harm.

Alternatively, Plaintiff argues Defendant S. Jackson's liability arose when the Warden's Office "designated S. Jackson to resolve the reported [protective custody] request." (ECF No. 233-4, p. 1–3). Plaintiff argues this "designation" made Defendant S. Jackson aware of the threat of harm. (*Id.*; ECF No. 233-7, p. 4). However, the transcript of the call on February 16 reveals no such delegation. (ECF No. 233-5, p. 5–15). Instead, the call reveals that Plaintiff's sister raised questions about the reason for Plaintiff's transfer. At that point, the warden's secretary transferred her call to Classifications because Classifications, not the warden's office, could answer these questions. *Id.* at 5–6. Even if Defendant S. Jackson was "designated to handle" the call, the substance of the call offers no basis from which this Court could infer that Defendant S. Jackson was aware of a substantial risk of serious harm. This objection is overruled.

Plaintiff also asks this court to infer that Defendant S. Jackson's failure to acknowledge the phone call is circumstantial evidence of her knowledge at the time of the event. (ECF No. 233-4, p. 5). While Plaintiff is entitled to inferences in his favor, those inferences must be reasonable. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Because the call itself offers no basis for liability, it is unreasonable to infer that any later denial of its existence is circumstantial evidence that the phone call made Defendant S. Jackson aware of a substantial risk of serious harm to Plaintiff. This objection is overruled.

Without establishing the first prong of deliberate indifference, Plaintiff moves to the second—the objectively reasonable response. In doing so, Plaintiff objects to the reasonableness of Defendant S. Jackson's directive to speak with Security because Plaintiff

alleges that the relevant "statement" can only be made with a prior interview. (ECF No. 233-4, p. 2). Yet Plaintiff admits the interview occurred. (ECF No. 233-2, p. 1; ECF No. 233-7, p. 7; ECF No. 185, p. 3). Further, Plaintiff offers no evidence of this policy limitation. Plaintiff's evidence includes three examples of inmate request forms that he sent to Security without any evidence of a prior interview. (ECF No. 42-3, p. 39–41).

Plaintiff also argues that Defendant S. Jackson could have "easily done" more, including transferring Plaintiff to another SCDC facility. (ECF No. 233-7, p. 5–6). Plaintiff offers no indication—much less evidence—that Defendant S. Jackson had authority to initiate an institutional move. Nor does he offer any evidence that it would have resolved the "hostilities" that Plaintiff alleges existed throughout SCDC. Therefore, that proposed transfer would have offered no refuge for Plaintiff's fear. Instead, Defendant S. Jackson explained the procedural process that would allow Plaintiff to request protective custody. (ECF No. 233-5, p. 8–15). Defendant Jackson repeatedly informed Plaintiff and his sister of the need for Plaintiff to contact Security, not Classifications. *Id.* By clearly articulating institutional policies and providing accurate instructions for Plaintiff to resolve his concern, Defendant S. Jackson acted reasonably. Plaintiff offers no evidence to contradict the reasonableness of Defendant S. Jackson's actions. This objection is overruled.

**f. Objections Involving Defendants Nelson and Ward**

Finally, Plaintiff raises objections about Defendants Nelson and Ward as related to supervisory liability and the decision to deny Plaintiff's requests for protective custody. (ECF No. 233-7, p. 8–9). Plaintiff claims that Defendants Nelson and Ward failed to interview Plaintiff for protective custody as Vaught recommended. (ECF No. 185, p. 8–9). The record

says otherwise. (ECF No. 185, p. 3; ECF No. 233-2, p. 1, 2). Even Plaintiff repeatedly admits that the interview occurred. (ECF No. 233-2, p. 1, 2).

Plaintiff's claims relating to Defendants Ward and Nelson face the same paradox as Defendant S. Jackson's because the relevance of Plaintiff's prior assault and requests for protective custody is at odds with his argument about the reason for the March 2022 incident. On the one hand, Plaintiff claims that he needed protective custody because of his prior assault and statewide hostilities from gangs. (*E.g.*, ECF No. 233-2, p. 1–2). On the other, Plaintiff claims he was assaulted because he was disrespectful to Defendant A. Jackson. (*E.g.*, ECF No. 233, p. 4).

As discussed above, the Eighth Amendment claim for failure to protect requires that Defendants' deliberate indifference caused the deprivation. *See Jackson*, 181 F.4th at 414. Plaintiff has not shown any causal link between the asserted inaction of Defendants Ward and Nelson and the incident. *See Shaw*, 13 F.3d at 799. Instead, Plaintiff offers evidence that the incident occurred due to isolated, local interpersonal conflict between inmates. (ECF No. 233-1, p. 1).

Additionally, Plaintiff objects to the Report's finding that Vaught's visit and her report did not establish knowledge of substantial risk of serious harm by Defendants Nelson and Ward. (ECF No. 233-2, p. 1, 2).[7] The substance of Vaught's report does not establish that Defendants had actual knowledge of any substantial risk of serious harm Plaintiff faced because it included only general concerns of his safety based on his "vibes" that "something would happen" if he stayed in general population. (ECF No. 42-3, p. 33–34). This is the exact,

[7] Plaintiff makes no allegations that Defendants S. Jackson, A. Jackson, Banks, or Jones had any knowledge of Vaught's report.

non-specific fear of harm that is insufficient to support a deliberate indifference claim. *See Battle*, 2021 WL 4167509, at *10 (collecting cases). Further still, Vaught's report shows that Plaintiff stated that he had not experienced any issues since his return to BRCI. (ECF No. 185-1, p. 10; ECF No. 42-3, p. 33–34).

Plaintiff reiterates his objection that the risk of harm was obvious as related to Defendants Nelson and Ward based on the "institutional safety issues at BRCI." The generalized risk of harm at BRCI, Plaintiff argues, was evidence that Plaintiff was particularly susceptible to harm from inmates. (ECF No. 233-2, p. 2). The Supreme Court has been clear that "it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners *in his situation* face such a risk." *Makdessi*, 789 F.3d at 134 (quoting *Farmer*, 511 U.S. at 843). However, that risk must still be substantial and relate to serious harm.

A risk may be "obvious" where the plaintiff offers circumstantial evidence that the "substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it." *Makdessi*, 789 F.3d at 133 (quoting *Farmer*, 511 U.S. at 842–43)). Plaintiff has not shown that assaults occurred so regularly that they were "pervasive" or that Plaintiff belonged to an "identifiable group of prisoners" for whom assaults were a particularly heightened threat. *Cf. Walsh v. Brewer*, 733 F.2d 473, 476 (7th Cir. 1984) (holding that an "atmosphere of lawlessness and violence" within the prison required more than normal prison disturbances). Even assuming that BRCI had longstanding, pervasive, and well-documented inmate attacks

that meant Plaintiff was exposed to a substantial risk of severe harm, those risks must still have been actually known to Defendants. *See Milan v. S.C. Dep't of Corr.*, No. 17-cv-02692, 2020 WL 4588973, at *27 & n.16 (D.S.C. Feb. 28, 2020), *R&R adopted*, No. 17-cv-02692, 2020 WL 2487496 (D.S.C. May 13, 2020). Plaintiff argues that an institution-wide February 16, 2021 lockdown on a "gang holiday" known as "Bloody Sunday" is evidence of pervasive assaults at BRCI. (ECF No. 185, p. 1–2). No such inference can be drawn; that lockdown reveals only an isolated incident because as Plaintiff admits, it was a specific "holiday," not an everyday occurrence.

Plaintiff cites *Milan* as evidence of a longstanding, pervasive, and well-documented risk to inmates at BRCI. (ECF no. 185-1, p. 14). In *Milan*, the relevance of the 2018 "Roth Report" spoke to SCDC's institutional liability in a *Monell* claim—not individual liability. *Milan*, 2020 WL 4588973, at *27 & n.16. With respect to the individual defendants, the Court made clear that the plaintiff had to establish that the individual defendants had seen the Roth Report—its existence alone was not enough. *Id.* at *27. Similarly here, Plaintiff fails to put forth that evidence related to Defendants. Furthermore, Plaintiff offers no evidence that the conditions identified in the 2018 Roth Report were still ongoing in 2022 and applicable to his situation. Plaintiff cites a slew of cases that discuss violence at BRCI. (ECF No. 185, p. 6–7). To be clear, each of these reveals another tragic incident within SCDC. But isolated incidents of inmate violence do not an epidemic make.

Even if, as Plaintiff alleges, BRCI faced institution-wide security issues and hostilities, the Fourth Circuit has made clear that recognizing institutional deficiency does not render all prisoners within the prison "*per se* subject to an excessive risk to inmate health or safety. *See Adams v. Ferguson*, 884 F.3d 219, 228 (4th Cir. 2018) In *Adams v. Ferguson*, the Virginia

legislature had issued a "Competency Order" that set forth a scheme for inmates with serious mental health conditions. *Id.* The scheme presumed that inmates with serious mental health conditions were "*more likely* to have their competency restored if they receive[d] treatment at a state mental health hospital." *Id.* The Fourth Circuit rejected the contention that the Order meant that that "inmates with such conditions who remain in Virginia's prison system are *per se* subject to an 'excessive risk to inmate health or safety.'" *Id.* (quoting *Farmer*, 511 U.S. at 837). The Eighth Amendment requires something more unique to the aggrieved inmate—or to an identified group of inmates to which the inmate belongs—than prison-wide hostilities. *See Jackson*, 181 F.4th at 415.

Plaintiff's second set of objections related to Defendant Ward and Defendant Nelson argue that Plaintiff's prior ARTSMs requesting protective custody establish actual knowledge of a substantial risk of serious harm. Plaintiff attached several ARTSMs to his objections and the Amended Complaint, (ECF No. 42), to argue that Defendants Ward and Nelson were aware of the substantial risk of serious harm that Plaintiff faced. Plaintiff does not suggest that Defendant Jones, Defendant A. Jackson, Defendant S. Jackson, or Defendant Banks ever saw these submissions. His objection is more adequately framed as an argument based on the existence of these ARTSMs. Deliberate indifference requires more than constructive knowledge of the substantial risk of serious harm; it requires actual knowledge of that risk. *Milan*, 2020 WL 4588973, at *27; *Farmer*, 511 U.S. at 837.

Plaintiff assumes that Defendant Nelson received the ARTSMs based on the responses that indicated they were forwarded to Warden Nelson, (ECF No. 233-3, p. 4; ECF No. 233-5, p. 14), and because of a Post Order that stated that complaints of noncompliance were sent to the Warden. (ECF No. 184, p. 8, 17; ECF No. 153-1, p. 3). Plaintiff argues that this policy is

circumstantial evidence that the Warden himself reviews these complaints, not the Warden's office generally. Plaintiff's assumption that Defendant Ward received these requests is even more attenuated; Plaintiff argues that Ward, as a Lieutenant, had "access to his records." (ECF. No. 185, p. 6).

Assuming *arguendo* that Defendants Ward and Nelson were aware of these submissions, the submissions lacked the necessary specificity to infer actual knowledge by Defendants of a substantial risk of serious harm to Plaintiff beyond the general dangers of prison life. "Any time an individual is incarcerated, there is some risk that he may be a victim of violence at the hands of fellow inmates." *Westmoreland*, 883 F. Supp. at 74. That generalized risk alone does not support an Eighth Amendment claim. *See Grieveson*, 538 F.3d at 776–77.

Plaintiff's inmate reports offer insufficient specificity from which prison officials could have ascertained whether Plaintiff faced a substantial risk of serious harm. Generalized or vague concerns cannot serve as circumstantial evidence that Defendants actually knew of a substantial risk of serious harm. To be clear, prison officials can be deliberately indifferent without the inmate reporting the threat of harm. *Farmer*, 511 U.S. at 848–49. However, for the reports to be circumstantial evidence of the official's knowledge of the substantial risk of serious harm, their substance must be more than a generalized statement of fear or prison life hostilities. *See Battle*, 2021 WL 4167509, at *10 (collecting cases); *Adams*, 884 F3d. at 228.

Plaintiff asks this Court to assume that the generalized and vague grievances on these forms conveyed substantial risk of serious harm to Defendants Ward and Nelson. Even when taking all inferences in the light most favorable to Plaintiff, the law prohibits such an assumption. *See Ford v. Hooks*, 108 F.4th 224, 231 (4th Cir. 2024). Therefore, Plaintiff's

objections related to the ARTSMs as evidence that Defendants were aware of a substantial risk of serious harm to Plaintiff are overruled.

Again, moving past the absence of evidence to establish Defendants' knowledge of substantial risk of serious harm, Plaintiff argues at length that Defendants Ward and Nelson's actions were unreasonable. (ECF No. 233-2, p. 1–4; ECF No. 233-7, p. 8–10). Plaintiff cites *Cox v. Quinn* for the principle that Defendants' response to a known threat to inmate safety must be reasonable. (ECF No. 233-4, p. 4). However, Plaintiff's objections about the reasonableness of Defendants' various responses cannot establish a failure to protect claim given the lack of knowledge discussed below.

The Fourth Circuit recently discussed the impact of vague inmate requests for protective custody in *Ford v. Hooks*, 108 F.4th 224 (4th Cir. 2024). In *Ford*, the plaintiff filed several requests for protective custody in the months preceding his assault. 108 F.4th at 227–29. After cooperating with prosecutors over 10 years before the assault, Ford's requests were based on "ongoing threats of harm by gang members" arising from that cooperation. *Id.* at 230–31. Four defendants who were "aware of" Ford's requests for protective custody and the "reasons for his fear of reprisal" were also required by prison policy to investigate claims and respond appropriately. *Id.* at 231. When Ford did not provide names or even nicknames to prison officials, prison officials "did not have enough information to carry out an appropriate investigation." *Id.* The Fourth Circuit affirmed that in denying protective custody, officers did not act with deliberate indifference because the denial was reasonable in light of the lack of the evidence before them. *Id.*

*Ford* is instructive in this case related to Defendants Nelson, and Ward, with regard to the reasonableness of their actions, notwithstanding the failure to establish the first prong of

deliberate indifference. Plaintiff has offered no evidence that Nelson or Ward had any more information than those officers in *Ford*. Notably, Plaintiff does not set forth evidence that either Defendant Nelson or Defendant Ward would have been intricately involved in the protective custody decisions. Plaintiff expressed his fear and reminded officials of his prior attack—nothing more specific. Plaintiff offers no evidence that the protective custody denial was unreasonable other than the resulting incident—for which Plaintiff identifies ulterior motives. Therefore, these ARTSM forms are not evidence of deliberate indifference. This objection is overruled.

**g. Plaintiff's Miscellaneous Objections**

Plaintiff offers several miscellaneous objections that argue undisputed facts or misconstrue the Report. For the reasons discussed below, these objections are overruled.

First, despite Plaintiff's use of the term supervisory liability in his objections (*E.g.*, ECF No. 233-2, p. 5), Plaintiff fails to set forth a claim for supervisory liability. A supervisor's "mere knowledge" that his subordinates are engaged in unconstitutional conduct is not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009). Instead, To establish supervisor liability in a § 1983 action, Plaintiff must show (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw*,

13 F.3d at 799; *Robinson v. Riley*, No. 19-cv-826, 2021 WL 6052616, at *12 (D.S.C. Dec. 21, 2021).

Because Plaintiff has failed to put forth evidence of a constitutional injury—as discussed above—Plaintiff failed to establish the third element of supervisory liability. Any objections that allege supervisory liability on behalf of Defendants S. Jackson, Ward, and Nelson are, therefore, overruled.

Second, Plaintiff argues that there is a dispute over whether the "incident ever happened" that precludes summary judgment. (ECF No. 233-2, p. 8). Neither party disputes that Plaintiff was injured at BRCI on March 10, 2022. The operative question, however, is whether a constitutional violation occurred. As discussed above, Plaintiff has failed to put forth evidence that Defendants failed to protect Plaintiff in violation of his Eighth Amendment rights. This objection is overruled.

Third, Plaintiff argues that the factfinder, not the court must weigh the credibility of the evidence to determine "whether the claims ever occurred." (ECF No. 233-2, p. 7–9; ECF No. 233-3, p. 2) Plaintiff requests that this Court conduct a de novo review, leaving credibility determinations to the factfinder. (ECF No. 233-2, p. 7–9; ECF No. 233-3, p. 2). Although Plaintiff correctly states the standard of review at summary judgment, Plaintiff misunderstands the burden of proof. Plaintiff must put forward admissible evidence that creates a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25 (1986). Only then are credibility determinations left to the finder of fact. Further, the district court is only required to conduct a de novo review of the specific portions of the Magistrate Judge's Report to which an objection is made. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); *Carniewski v. W. Virginia Bd. of Prob. & Parole*, 974 F.2d 1330 (4th Cir. 1992). De novo review is not required in the

absence of specific objections to portions of the Magistrate's Report. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). This objection is non-specific and thus overruled.

Fourth, Plaintiff objects to the Report's alleged omission of ECF No. 163 in its findings. (ECF No. 233-2, p. 8). Plaintiff alleges that the Report omits consideration of Plaintiff's third Motion for Summary Judgment (ECF No 163). (ECF No. 233-2, p. 8). The Report addresses this motion. (ECF No. 229, p. 31). Because this motion sought the opposite relief of the Defendants' motion for summary judgment, the arguments in Plaintiff's motion were discussed by referencing the Report's preceding substantive analysis. (ECF No. 229, p. 31).

Fifth, Plaintiff objects to the Report's discussion of qualified immunity, arguing that "clearly established precedent" renders qualified immunity inappropriate. (ECF No. 233, p. 3). To overcome the qualified immunity defense, the Plaintiff must show "(1) that the government official[s] violated a statutory or constitutional right and (2) that right was clearly established at the time of the challenged conduct." *King*, 76 F.4th at 265. Plaintiff's argument glosses past the first—and necessary—element of the defense: Plaintiff must show that the prison officials violated a statutory or constitutional right. In light of the foregoing discussion as to the Eighth Amendment failure to protect claim, the prerequisite constitutional violation is absent. To the extent Plaintiff's objections about qualified immunity actually address the Eighth Amendment failure to protect claim, those objections have been discussed above. Plaintiff's objections related to qualified immunity are overruled.

Finally, Plaintiff argues that the Report did not address prior filings and asks the court to address "Rule 56(c) motions." (ECF No. 233, p. 1). However, Rule 56(c) is not itself a substantive rule of procedure and does not authorize the Court to act. Instead, it outlines the procedural requirements necessary for a motion for summary judgment. Asking the court to

construe these filings as objections to the Report is not responsive to the substance of the Report itself. Alternatively, the "motions" that Plaintiff seeks to be construed as objections are clearly styled as Rule 50 motions for judgment as a matter of law. Such a motion is premature at this stage. Fed. R. Civ. P. 50(a) ("A motion for judgment as a matter of law may be made at any time [during trial] before the case is submitted to the jury."). Rule 50 motions do not come ripe until "a party has been fully heard on an issue during a jury trial." *Id.* To the extent Plaintiff's responsive objections incorporate ECF Nos. 184 and 185, those arguments have been addressed in the discussion above. Otherwise, this objection is overruled.

## IV. PLAINTIFF'S MOTION TO AMEND

After the Report was filed, Plaintiff filed a "Motion, Request, and Notice to Supplement Complaint," (ECF No. 231), that substantively sought to amend his complaint and add claims for defamation and libel. (ECF No. 231, p. 1–4). In Plaintiff's subsequent "Motion to Withdraw ECF # 231," Plaintiff conditioned his withdrawal upon whether the court deemed the motion to amend "appropriate." (ECF No. 237, p. 1). Given this conditional withdrawal, the Court has reviewed Plaintiff's motion to amend in full.

Pursuant to Federal Rule of Civil Procedure 15, the court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15. The law is clear: leave to amend a pleading should be denied when the amendment would be futile. *Aljizzani v. Middle E. Broad. Networks, Inc.*, 178 F.4th 863, 871 (4th Cir. 2026). An amendment is futile when it does not cure the "fundamental deficiencies" in the cause of action. *Id.* (quoting *Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630 (4th Cir. 2008)). Plaintiff's proposed amendments appear to alter the cause of action by adding defamation and libel claims but do not resolve the

"fundamental deficiencies" in the Eighth Amendment failure to protect claim, as discussed above. Therefore, the motion to amend is denied.

## V. PLAINTIFF'S MOTION FOR SANCTIONS

After the Report was filed, Plaintiff filed two motions for sanctions (ECF Nos. 237, 242). In these motions, Plaintiff argues that Defendant S. Jackson denied the February 16, 2022, phone call in previous state court proceedings but now admits it occurred and provided a transcript. (ECF No. 237, p. 1; ECF No. 242, p. 1–4).

Seeking sanctions, Plaintiff invoked Rule 11 of the Federal Rules of Civil Procedure; however, Rule 11 sanctions apply only to proceedings within a specific federal case. Fed. R. Civ. P. 11. State court proceedings or other federal litigation do not fall within the jurisdiction of this Court as related to Rule 11 sanctions. Because Plaintiff's allegations are based on earlier "iterations" of this case and state court litigation, Rule 11 offers no refuge for Plaintiff's complaint in this proceeding. To the extent Plaintiff references any statements in this proceeding, Plaintiff also failed to comply with the necessary safe harbor provision of Rule 11. Fed. R. Civ. P. 11(c)(2). Without addressing the merit of Plaintiff's allegations toward Defendant S. Jackson, these motions are denied.

## VI. CONCLUSION

After a thorough review of the Report, the applicable law, and the record of this case, the Court finds no clear error in the Report. After a de novo review of each part of the Report to which Plaintiff specifically objected, the Court hereby adopts the Report and Recommendation. (ECF No. 229). Accordingly, Defendants' motion for summary judgment is granted, and Plaintiff's motions for summary judgment are denied (ECF Nos. 126, 148, 163, 197, 202, 203, 204). This matter is dismissed with prejudice, without leave to amend.

Plaintiff's motions for sanctions are denied. (ECF Nos. 231, 237, 238). All other pending motions are terminated as moot.

IT IS SO ORDERED.

September 30, 2026
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge